## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

NATHANIEL M.,                        )
                                     )
                   Plaintiff         )
                                     )
v.                                   )        No. 1:22-cv-00237-LEW
                                     )
KILOLO KIJAKAZI,                     )
Acting Commissioner of               )
Social Security,                     )
                                     )
                   Defendant         )

## REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred in concluding that he had no medically determinable mental impairment and no mental limitations. *See* Plaintiff's Brief (ECF No. 16). I agree and recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.

## I. Background

The Plaintiff applied for benefits in April 2019. *See* Record at 16. After his application was denied at the initial and reconsideration levels, the Plaintiff requested a hearing before an ALJ. *See id.* That hearing took place in February 2021, following which the ALJ entered a written decision finding that the Plaintiff had the severe impairments of labral tear of the hip and degenerative disc disease of the cervical and lumbar spine. *See id.* at 16, 21. The ALJ nevertheless found that the Plaintiff had the residual functional capacity (RFC) to perform light work with

1

several additional physical limitations.  *See id.* at 23.  The ALJ concluded that the Plaintiff could perform jobs existing in significant numbers in the national economy with such an RFC and that he therefore had not been disabled from February 23, 2019, his amended alleged onset date, through December 31, 2019, his date last insured.  *See id.* at 29-31.  The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result.  *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).  But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III.  Discussion

As part of a previous claim for benefits, the Plaintiff underwent a psychological evaluation by Susanne Stiefel, Ph.D., in January 2019.  *See* Record

2

at 904-09, 911-13.  Among other things, Dr. Stiefel administered the Weschler Adult Intelligence Scale-IV (WAIS-IV) and the Beck Depression Inventory-2.  *See id.* at 904.

In recounting the results of the WAIS-IV testing, Dr. Stiefel noted that the Plaintiff's full-scale IQ was 77, "which fell in the borderline range," but that his "unique set of thinking and reasoning abilities [made] his overall intellectual functioning difficult to summarize in a single score on the WAIS-IV."  *Id.* at 906.  She went on to explain,

> Overall his verbal reasoning abilities are in the borderline range and his nonverbal reasoning abilities are in the average range.  His ability to sustain attention, concentrate, and exert mental control is in the low-average range.  His processing speed was in the extremely-low range.  It is certainly possible that his experiences of high levels of pain during the course of the interview could have affected some of the scores, specifically the processing speed, for example.  In addition, he may have a learning disability in the area of reading and would need further assessment.

*Id.* at 907.

With regard to the Beck Depression Inventory-2, Dr. Stiefel noted that the Plaintiff "scored in the mild range of depressive symptoms."  *Id.*  She noted that his "affect appeared somewhat depressed" and she thought he tended to "underreport some of his symptoms."  *Id.*  She further noted that the Plaintiff's habit of drinking three beers per day was "not helping" his depressive symptoms but that his alcohol use was not material to her opinion.  *Id.* at 912 ("Alcohol use of 3 beers daily is not helping but would not change answers given.").  Ultimately, she diagnosed him with an unspecified depressive disorder.  *See id.* at 909.

In summarizing the Plaintiff's capacity to do work-related activities, Dr. Stiefel opined that he was moderately impaired in understanding, remembering, carrying out complex instructions and making judgments on complex work-related decisions. *See id.* at 911. She further opined that he might have difficulty with verbal concepts and the meanings of words if he were required to read and that "he might have more difficulty dealing with work stressors and maintaining attention and concentration on the job because of coping with chronic pain with some symptoms of depression which may well be associated with his medical issues." *Id.* at 908. She more affirmatively opined that the Plaintiff could "understand, remember, and carry out simple job instructions provided that they were presented to him at his level of comprehension and/or reading ability." *Id.* At the end of her report, she concluded, "Overall his current symptoms and coping with chronic pain and . . . likely some depressive features are having a moderate to severe impact on his social and occupational functioning at this time." *Id.* at 909.

In connection with the claim for benefits at issue in this appeal, the Plaintiff underwent another psychological evaluation in November 2019 with Corey D. Smith, Psy.D. *See id.* at 559. After reviewing the Plaintiff's medical records and performing a mental status exam, Dr. Smith diagnosed the Plaintiff with Attention-Deficit Hyperactivity Disorder (ADHD) "by report" and a rule out diagnosis of a learning disorder/impairment in reading. *Id.* at 562.[1] Dr. Smith opined that the

---

[1] In her decision, the ALJ mistakenly indicated that Dr. Smith "ruled out [a] specific learning disorder." Record at 22; *see, e.g., Simpson v. Comm'r, Soc. Sec. Admin.*, No. 99-1816-JO, 2001 WL 213762, at *8 (D. Or. Feb. 8, 2001) (noting that, as a matter of commonsense, a rule out diagnosis "simply means that a particular diagnosis is neither ruled in nor ruled out by the examining physician").

Plaintiff's ability to sustain attention and concentration was mildly impaired but that he was able to understand and carry out short and simple instructions, relate to coworkers and supervisors, and adapt to changes in his work environment. *See id.* at 561. But Dr. Smith ultimately concluded, "It appears [the Plaintiff's] disability is based on his physical conditions and he is not a candidate for Psychiatric or Psychological intervention." *Id.* at 562.

Agency nonexamining consultant Brian Stahl, Ph.D., reviewed the medical record—which included Dr. Smith's report but did not include Dr. Stiefel's report[2]—at the initial level of review in November 2019. *See id.* at 111-17. Dr. Stahl opined that the plaintiff did not have any medically determinable mental impairments, explaining,

> [The Plaintiff] has not been involved in psych[iatric] treatment recently. He reports a history of ADHD as a child. [He] indicated he had to stop work due to physical allegations. No significant limitations noted at the CE and no[ ] diagnosis other than a report of ADHD by history.

*Id.* at 113. At the reconsideration level in February 2020, agency nonexamining consultant David Houston, Ph.D., reached the same conclusion—again without the benefit of Dr. Stiefel's report. *See id.* at 119-26.

At Step 2, the ALJ was "persuaded by the bulk of" Drs. Smith's, Stahl's, and Houston's opinions, and concluded that the Plaintiff did not have a medically determinable mental impairment. *Id.* at 22. With regard to Dr. Stiefel's report and opinion, the ALJ explained:

---

[2] In referring to Dr. Stiefel's report, I am referring to her psychological evaluation and her medical source statement, both of which were issued on the same day. *See* Record at 904-09, 911-13.

[P]rior to the period of disability at issue, consultative examiner Susanne Stiefel, Ph.D., noted that it was unclear whether the [Plaintiff] would qualify for a diagnosis of ADHD or learning disorder. She assessed an unspecified depressive disorder at the time, which she speculated was influenced by drinking, medical issues, and chronic pain. She completed [full-scale IQ] testing of the [Plaintiff], but also noted that scoring was difficult to summarize in view of a twenty-point difference in verbal and perceptual reasoning scores, as well as above average testing in some areas. Dr. Stiefel felt that pain could have affected the [Plaintiff's] test taking and she also speculated that the [Plaintiff] could have a learning disability in the area of reading. She felt the [Plaintiff's] functioning was more affected by his physical issues. It is noted that Dr. Stiefel did not seek to assess the most the [Plaintiff] could do ("may have"; "may be"), as required by this agency. The undersigned finds that this prior consultative examination, while it provides some background, does not undermine the finding here of no medically determinable mental impairments.

*Id.* (citations omitted).

The Plaintiff argues, among other things, that the ALJ erred in relying on the opinions of Drs. Stahl and Houston because they did not review Dr. Stiefel's report. *See* Plaintiff's Brief at 3-4. He emphasizes that Dr. Stiefel was the only medical expert who performed "any psychological testing," that her testing revealed some borderline and low IQ scores, and that she diagnosed depression, all of which calls into question Drs. Stahl's and Houston's conclusions that he had no medically determinable mental impairment and, therefore, had no mental limitations. *Id.* at 4-5; *see* Reply Brief (ECF No. 21) at 1-5.

The Commissioner counters that the ALJ's findings are directly supported by the opinions of Drs. Stahl and Houston, who had the benefit of review Dr. Smith's consultative examination report. *See* Commissioner's Brief (ECF No. 18) at 2-3. She further argues that the ALJ supportably found "that Dr. Stiefel's report was not

particularly probative of" the "Plaintiff's mental functioning because it predated the alleged onset date, contained IQ scores that Dr. Stiefel herself questioned, and was couched in vague terms that did not describe concrete mental restrictions." *Id.* at 3-4.

The Plaintiff has the better argument for several reasons.

First, Dr. Stiefel's examination and report predated the Plaintiff's amended alleged onset date by less than two months; it cannot be said that this short gap undermined the relevance of her opinion in any significant way. Second, although it is true that Dr. Stiefel indicated that the Plaintiff's IQ scores were difficult to summarize, may have been affected by his chronic pain, and were somewhat out-of-step with his prior skilled work as a mechanic, she did not indicate that those factors wholly undermined the significance of his borderline verbal comprehension score or his extremely-low processing speed score—and the ALJ was ill-suited to reach that conclusion on her own. *Cf. Baldwin ex rel. J.N. v. Astrue*, No. 08-cv-02256-WYD, 2010 WL 1254839, at *5 (D. Colo. Mar. 26, 2010) ("Without the benefit of psychological expertise and training, the ALJ was ill suited to interpret the test results, and was certainly not qualified to deny the claim based on his layperson's assessment that the validity of the IQ scores as measured by the [Weschler Intelligence Scale for Children-III] are questionable."). Third, Dr. Stiefel's conclusions were not all couched in vague or qualified terms—she affirmatively diagnosed the Plaintiff with a depressive disorder and opined that he could understand and carry out simple work instructions "provided that they were presented to him at his level of comprehension and/or reading ability." Record

7

at 908-09.  And finally, Dr. Smith's later consultative examination did not render Dr. Stiefel's report redundant or obsolete; Dr. Smith did not perform the same psychological testing as Dr. Stiefel nor did he reach the same conclusions.  *Compare id.* at 559-62 *with id.* at 904-09.

All that is to say the ALJ's attempt to pass off Dr. Stiefel's report as merely providing "some background," *id.* at 22, rather than being material to the Plaintiff's mental functioning during the relevant period does not withstand scrutiny.  And given the materiality of Dr. Stiefel's test results, diagnosis, and opinion, I am not confident that had Drs. Stahl and Houston seen her report, they would have continued to opine that the Plaintiff had no medically determinable mental impairments and no mental limitations.  Indeed, Dr. Stiefel provided both the diagnosis and significant limitations that Drs. Stahl and Houston noted were missing from the records they reviewed.  *See* Record at 113, 121, 908-09.  In such circumstances, Drs. Stahl's and Houston's opinions cannot serve as substantial evidence in support of the ALJ's decision and remand is warranted.[3]  *See, e.g., Brown v. Barnhart*, No. 06-22-B-W, 2006 WL 3519308, at *3-4, 8 (D. Me. Dec. 6, 2006)

---

[3] In reaching this conclusion, I acknowledge that the vocational expert testified that the Plaintiff could still perform the jobs that the ALJ relied upon at Step 5 if he were limited to simple work instructions. *See* Record at 30, 77-79.  A limitation to simple work instructions, however, seemingly does not fully capture Dr. Stiefel's opinion that the instructions would have to be presented to the Plaintiff in a way he could comprehend, nor am I in a position, as a layperson, to speculate as to what other limitations Drs. Stahl and Houston might have adopted had they seen Dr. Stiefel's report.  Accordingly, I cannot say that the ALJ's error in relying on Drs. Stahl's and Houston's opinions to find that the Plaintiff had no medically determinable mental impairment was harmless.  *See, e.g., Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *4-7 (D. Me. Dec. 29, 2010) (rec. dec.) (holding that a claimant had shown harmful error at Step 2 by pointing to evidence unseen by the agency nonexamining consultant on whose opinion the ALJ had relied because the unseen evidence contained new diagnoses and suggested serious occupational impairments), *aff'd*, 2011 WL 177134 (D. Me. Jan. 19, 2011).

(rec. dec.) (remanding and holding that agency nonexamining consultants' opinions cannot not serve as substantial evidence where unseen evidence calls into question their conclusions), *aff'd*, ECF No. 14 (D. Me. Dec. 28, 2006).[4]

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: June 23, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge

---

[4] In light of this conclusion, I need not address the Plaintiff's other assignments of error.